[No. 15071. Department One. April 8, 1919.]

THE STATE OF WASHINGTON, *Respondent*, v. W. J. BEATON, *Appellant*.[1]

CRIMINAL LAW (108) — EMBEZZLEMENT (14) — EVIDENCE — RELEVANCY. In a prosecution for the embezzlement of $50 by an agent, which was to have been part of remittance of $265, it is not error to receive preliminary evidence as to how the other money was to be included in the remittance, where there was no suggestion of misappropriation thereof except as inferred from failure to remit.

EMBEZZLEMENT (14)—EVIDENCE—ADMISSIBILITY. In a prosecution for the embezzlement of $50 by an agent, in which the defense brought out previous transactions of the defendant in conducting the business and offered a great mass of documentary evidence relating thereto, it is proper to restrict the same to a period of one year immediately preceding the filing of the information, where a full accounting and the rejected evidence only tended to confuse and befog the issues.

WITNESSES (111)—IMPEACHMENT—CIVIL SUIT. In a prosecution for embezzlement by an agent, the defendant is entitled to show the pendency of a civil action for wages, commenced by him against the prosecuting witness, in order to show bias or prejudice affecting the credibility of the witness (MITCHELL, J., dissenting).

[1]Reported in 180 Pac. 146.

Appeal from a judgment of the superior court for King county, Mills, J., entered December 15, 1917, upon a trial and conviction of petit larceny. Reversed.

*John F. Dore,* for appellant.

*Alfred H. Lundin* and *Erven H. Palmer,* for respondent.

TOLMAN, J.—Appellant was charged with the crime of grand larceny, the charging part of the information being as follows:

"He, said W. J. Beaton, in the county of King, state of Washington, within one year last past, then and there being the agent, trustee and bailee of one Lloyd Allen, did then and there have intrusted to him, by virtue of being such agent, trustee, and bailee, and have in his possession, custody and control, as such agent, trustee and bailee, fifty dollars in money, of the value of fifty dollars in lawful money of the United States, the property of said Lloyd Allen, and said W. J. Beaton did then and there wilfully, unlawfully, fraudulently and feloniously secrete, withhold and appropriate the same to his own use, with intent to deprive and defraud said Lloyd Allen thereof."

From a verdict of guilty of the crime of petit larceny, and a judgment entered thereon, this appeal is prosecuted.

It appears that appellant was employed by one Mrs. L. J. Allen as the manager of a cigar stand, located in the old city hall, in the city of Seattle; and in addition to his other duties, he was authorized to lend the money of his employer to city employees. Mrs. Allen supplied him with a few hundred dollars of her own money, and borrowed $600 from one Waddingham, and turned that over, also, to appellant to be loaned. The money to be loaned and the proceeds of

the cigar stand were all kept in one bank account, in the name of the employer, but appellant had authority to make deposits and draw checks thereon. His instructions appear to have been to keep the loan fund separate upon the books and intact, and to pay for goods purchased and the expense of the business only out of the receipts of the cigar stand and the interest received on loans.

In November 1916, $400 of the money loaned out was drawn in and repaid to Waddingham, and in January, 1917, Mrs. Allen instructed appellant to draw in from the outstanding loans sufficient to repay the remaining $200 of the Waddingham loan, together with $15 interest accrued thereon; and at the same time advised him that her son owed Waddingham additional money, and that she would bring in to him $50 of her son's money, in installments, during the time required to collect the $215; and when all was in hand, appellant should forward to Waddingham, in England, the sum of $265. Mrs. Allen and her daughter turned over to appellant, in installments, the sum of $50, being the money of Lloyd Allen, the last of which was paid to appellant early in March, 1917.

At about the time of the receipt by him of the last installment of the $50, or soon thereafter, appellant informed Mrs. Allen that the $215 had been gathered in, and led her to believe that the sum of $265 had been sent by cashier's check to Waddingham, in England. A few weeks later, on receipt of a letter from Waddingham, Mrs. Allen advised appellant that the money had not been received by Waddingham, but was assured that the money had been sent, and thus for a time was lulled into inaction. Finally in June, 1917, upon her insisting that appellant go with her to the bank to obtain confirmation of his statement of

having purchased a cashier's check payable to Waddingham, appellant admitted to his employer that the money had not been sent, and then advised her that, in the fall of the preceding year, he had invested a part of her funds in another cigar store, purchased in his own name, but, as he claimed, for her benefit, and that he was then unable to get the money out of that investment or to call in from the loans sufficient to enable him to make the remittance.

Mrs. Allen and her daughter testified that appellant was specifically instructed to use the $50 of Lloyd Allen's money, intrusted to him, only in making the remittance to Waddingham; while appellant claims that, though the money was to be so remitted when the full sum of $265 was in hand, yet in the meantime, he was authorized and expected to deposit it in the bank with his employer's other funds, and to use it generally in the business in making short time loans, and in paying running expenses; that the cigar store was then losing money rapidly, and that the $50 was expended generally in the employer's business, and no part of it was appropriated to his own use.

Over a general objection, Mrs. Allen was permitted to testify that she intrusted to appellant, for loaning purposes, the proceeds of the Waddingham loan and several hundred dollars of her own money, upon the theory that it was preliminary only and necessary to enable the jury to understand how and why the $50 belonging to Lloyd Allen was to be remitted with other money to Waddingham, and when and how the other money to be included in the remittance was to come into appellant's hands; and on appellant's motion to strike the testimony, the court ruled:

"The Court: The motion to strike will be denied; but the jury is instructed there is no charge in this

case of any conversion of any of the money of Mrs. Allen, only the money belonging to Lloyd Allen is charged to have been converted.''

We think this general testimony, containing no suggestion of the misappropriation of funds belonging to Mrs. Allen, except as that might be inferred from the failure to remit $265, as limited by the court's instruction above quoted, was proper. Appellant's counsel saw fit to go fully into these transactions on cross-examination, and drew from the witness the statement that some $897, beside the $50 belonging to her son, had been intrusted to appellant to loan, that none of it had been returned, and that it was unaccounted for, except as to some $334, shown by a statement purporting to list the loans still outstanding. To meet this testimony, for which the state was in nowise responsible, and as tending to show that the money mentioned in the information was expended generally in the business conducted by Mrs. Allen, appellant offered a great mass of cancelled checks, bank statements, inventories, and books of account, showing in detail the business relations between himself and Mrs. Allen, from the time they began on March 1, 1915, until they ended in the fall of 1917; and the court ruled out all of these, except such as related to a period of one year immediately preceding the filing of the information. We find no error in this ruling. Even if a full accounting had been permitted, which was manifestly improper in such a trial, it could only have shown the condition of Mrs. Allen's business when appellant was instructed to draw in the money necessary for remittance to Waddingham, and this condition he was permitted to show. The rejected evidence could only serve to confuse and befog the issue which was before the jury.

Appellant's remaining contention is based upon the exclusion of evidence relating to a civil action, commenced by him against Mrs. Allen after his arrest, to recover $500, which he claims was due him for wages earned. After an objection had been sustained to a question propounded to Mrs. Allen on cross-examination, in effect inquiring if appellant was not then maintaining a civil action against her to recover $500 "wages that you owe," an offer was made to prove that appellant was then maintaining such an action, for the purpose of showing bias and prejudice on the part of the witness, which offer was rejected. This presents a question which it is contended this court has never squarely passed upon.

In *State v. McCann,* 16 Wash. 249, 47 Pac. 443, 49 Pac. 216, a prosecution for murder, this court said:

"The remaining questions were directed to occurrences between the deceased and the defendants, relating to altercations over road matters, and the part that the witness took therein. The objection was properly sustained to these questions. The witness had already testified that he was a friend of the deceased, and the court informed counsel for the defendants that he might interrogate the witness as to what feeling he had, friendly or unfriendly, towards the defendants, and this was all the defendants were entitled to show."

In *State v. Constantine,* 48 Wash. 218, 93 Pac. 317, a prosecution for assault with intent to kill, it was said:

"When the complaining witness, Jesse M. Hall, was on the witness stand he was questioned on cross-examination concerning a civil action he had commenced against the appellant to recover damages for injuries suffered on account of the shooting. In the course of the inquiry the complaint itself was offered in evidence, and, on an objection made on the part of the

state, was excluded by the court. This ruling constitutes the first error assigned. But we think the ruling correct. The fact that such a civil action had been begun was material on the question of the credibility of the witness, as it tended to show that he had more than the usual interest in the result of the criminal prosecution against the appellant, but all that was material was proven when the fact itself was admitted by the witness. It could add nothing to the proofs to introduce the complaint.''

In *State v. Eaid,* 55 Wash. 302, 104 Pac. 275, 33 L. R. A. (N. S.) 946, a prosecution for perjury, the court said:

''The appellant at the trial offered to prove the status of the civil action in which the false testimony is alleged to have been given, but an objection interposed by the state was sustained. This ruling was erroneous and prejudicial. The defendants in the civil action were the principal witnesses against the appellant on the trial of the criminal prosecution. If the judgment appealed from is affirmed, the appellant is rendered incompetent to testify in the civil action or any other case unless he shall receive a pardon. Bal. Code, § 5992. The defendants in the civil action would profit by the conviction of the appellant to that extent, and it was clearly competent to show that fact and to have the jury properly instructed as to the effect of the conviction.''

It is apparent that, in the last case cited, reasons existed for the introduction of such testimony which do not exist to the same extent here. And in the first case cited, the court, in ruling out the offered evidence, directed counsel's attention to what might properly be asked to elicit bias or prejudice. In this case, the pending action for wages, if there was one, could be shown in evidence only upon the theory that the pendency of such an action might tend to bias or prejudice the witness, though it is somewhat difficult to see why

such an action should add anything to the feeling which might be engendered by the misappropriation charged in the information. We think the general rule upon the admission of such evidence, although there is authority to the contrary, is as laid down by Professor Wigmore (Wigmore, Evidence, § 949), as follows:

"The pendency of civil litigation between the witness and the opponent is usually relevant, not only as a circumstance tending to create feeling, but also as involving conduct expressive of feeling; and while the mere fact of litigation upon a disconnected matter may not necessarily show bias, still it is useless to attempt to distinguish and refine for the purpose of exclusion."

See, also, Jones, Evidence (2d ed.), § 828; *Blenkiron v. State,* 40 Neb. 11, 58 N. W. 587; *Pierce v. Gilson,* 9 Vt. 216; *Olive v. State,* 11 Neb. 1, 7 N. W. 444; *Hitchcock v. Moore,* 70 Mich. 112, 37 N. W. 914, 14 Am. St. 474.

So were we to attempt to draw a distinction between this case and our own former decisions, we would have to refine and distinguish to such an extent as would cause uncertainty in future trials, which would result in far more harm than a reversal here. However, we think the inquiry along this line should be strictly limited to what is necessary to show the extent or degree of bias or prejudice which may exist; and care should always be exercised to avoid obscuring the real issues by putting before the jury a mass of evidence going into details.

Because of the error in refusing the offer to prove the pendency of a civil suit, the judgment is reversed, and the cause remanded for a new trial.

CHADWICK, C. J., MACKINTOSH, and MAIN, JJ., concur.

MITCHELL, J. (dissenting)—I dissent as to that part of the majority opinion relating to the admissibility of testimony concerning the pendency of a civil action commenced by defendant, after his arrest, against the complaining witness, Mrs. Allen.

The opinion says:

"After an objection had been sustained to a question propounded to Mrs. Allen on cross-examination, in effect inquiring if appellant was not then maintaining a civil action against her to recover $500 'wages that you owe,' an offer was made to prove that appellant was then maintaining *such an action,* for the purpose of showing bias and prejudice on the part of the witness, which offer was rejected."

The offer made, immediately following the ruling on the question objected to, must be taken as an attempt on the part of the appellant to fortify his claim of error in the court's sustaining the objection to the question asked Mrs. Allen. I have no doubt of the propriety of the rule announced in the case of *State v. Constantine,* 48 Wash. 218, 93 Pac. 317, allowing the defendant in the action on the cross-examination of the complaining witness to question the witness concerning the existence of a suit between them, by which the witness was seeking to recover damages for injuries caused by the shooting for which defendant was being tried, as tending to affect the credibility of the witness. The reason is obvious, and was expressed by the court: "as it tended to show that he had *more than the usual interest* in the result of the criminal prosecution against the appellant." Also, it may be conceded, if need be, that it would have been proper in the cross-examination of Mrs. Allen in the present case to have asked her if there was then pending a suit against her by the defendant to recover $500 for

wages he claimed to be due him, as tending to affect the value of her testimony, upon the theory of her possibly believing it might help her in the trial of the civil action later on to be able to show her adversary had been convicted of a crime, although upon a transaction unrelated to the subject-matter of the civil action. Again, it may be admitted, without deciding— for there is strong authority to the contrary—that Wigmore on Evidence, § 949, quoted in the majority opinion, announces a proper rule of evidence with reference to the pendency of civil litigation between the witness and his opponent, whether it be upon a disconnected matter or not.

But the question asked and the offer of proof in this case go far beyond the limit prescribed by the rule. Obviously, each, alike, comprehends two things: one the pendency of a suit between the parties; the other, the existence of a debt of $500 *owing* by the witness to the defendant in the criminal suit on trial. The one may be a proper subject of inquiry as going to the weight of the witness' testimony; the other is not, because it introduces a collateral matter not inquirable into in the trial of the criminal case. If the question had been answered in the affirmative or the negative, there would necessarily have been an affirmation or negation of the fact that she owed, not simply some amount, but $500, for wages. On the other hand, if the first part of the question had been answered "yes" and the latter part "no," she would have been testifying concerning and disputing that she owed $500 wages. Again, if she had answered "yes" to the first portion of the question and then stated she did not owe $500, but did owe a given amount considerably less than $500, the dispute would have been still present. No testimony concerning the issues of fact

in that case were proper to go to the jury in the trial of the criminal case.

The question and offer, having reference to a matter wholly disconnected from the one on which appellant was being tried, in the form in which they were put, were properly denied.