[File No. Cr. 129.]

# STATE OF NORTH DAKOTA, Respondent, v. JOE MICHELSKI, Appellant.

(268 N. W. 713.)

Opinion filed August 21, 1936.

*A. P. Paulson* and *William R. Pearce,* for appellant.

*P. O. Sathre,* Attorney General, *John Sad,* State's Attorney, and *L. T. Sproul,* Assistant State's Attorney, for respondent.

BURKE, Ch. J. The defendant on the 7th day of June, 1935 was found guilty, by the verdict of a jury, of the offense of manslaughter in the first degree. From a judgment of conviction entered on said verdict the defendant appeals.

The defendant testified that on the 27th day of March, 1935 the defendant, who lives near Fingal, North Dakota, came to the city of Valley City, arriving there about twelve o'clock noon. He left his car at the Texaco station to be washed, in charge of a man named Ludwig, went to the International Harvester Company for some shovels for a cultivator, went from there to the Arcade Restaurant and had a bowl of soup, went to the courthouse to see the county agent, but he was not there. He had in his car a little wheat, two empty beer bottles, a rope, and some canvas. He explains he bought two bottles of beer the day before at Fingal and not having returned the bottles they were still in the car. It was about 6:30 when he got ready to go home. He got the car and drove to the Red Owl Store, parked it there and went to the pool hall on the corner, "The Globe," where he met Paul Keller and John Holm. They each had a glass of beer, sat down, and in about five minutes each had another glass of beer, and a little after seven o'clock he started for home, driving east on highway No. 10. The road has a yellow center mark and he claims he kept on the south side of the center mark driving about forty miles an hour; that the tarvia on the road is about twenty feet and the shoulders are probably four; that he was driving forty miles an hour when he saw the car coming with which he collided; that he saw the lights of the car when it was quite a distance away; that the oncoming car was a little to the center but he didn't think it was over on his side at that time; that he kept going right along on his side of the road; that when he was probably five rods away he saw the car turn to the left. He said: "I couldn't do much. I took my foot off the gas and tried to swing out. I swung to my left and at the same time I swung out we hit. I didn't have much of a chance. There was no room to pass between the car and ditch on the south. I swung to the left." He claims that during the afternoon he drank only four glasses of beer and had only a bowl of soup to eat.

On the evening of the same day Roland E. Lee, Emil Splett, and Clay Kuntz, all of Lamoure, North Dakota, were driving west on

number ten. About two miles west of Oriska, in Barnes county, the witness Lee was sitting on the right hand side in the back seat. He saw car lights coming towards them from the west. He said: "The car was coming down on our side of the road. I looked out the back window and we were close to the ditch. I leaned over and looked between the two in the front seat and just before we came together Emil turned to the left, trying to miss the car and just as we came to the middle of the highway there was a collision."

The witness Splett corroborates the testimony of Lee in every particular. He said: "I had been watching this car. . . . It looked to me as if it was on my side. After I got over the little rise I could see plainly he was a way over on the north side. I started slacking up then and had my feet on the brake and clutch and when I got within about five rods of the car he hadn't made any effort whatever to turn over and I was afraid of the ditch. The ditch was full of water, so in order to avoid the car I swung over to the left, to the center of the road. I was going about fifteen miles an hour at the time and had two of my wheels on the gravel off the tarvia. The collision happened pretty well in the center of the highway. My car, I would say, was a foot on the south side of the line after it was all over. I can judge the speed of an automobile pretty well. I would say he was traveling fifty or sixty miles an hour. When I swung to the left and just got straightened west the other car swung right in from the north." Both Lee and Splett were knocked unconscious and when they came to they found that Clay Kuntz was dead and they heard the defendant groaning in his car.

There are many specifications of error relating to the testimony offered to prove that the defendant was intoxicated at the time of the collision.

The witness Splett testified: "I walked over to the other car and opened the door. The first thing I noticed was Michelski sitting there and I smelled alcohol—grain alcohol. I was right over his shoulder. I smelled it from the defendant. I leaned over his shoulder in order to look in the back of his car to see if anybody was hurt in his car. When I opened the door he made a kind of groan and then he says 'Get me out of here. I got to get out of here.'

"Q. Mr. Splett, from what you were able to observe from his actions

in the car, from his expression, and from the way he acted, and this odor, could you state whether or not the defendant was sober or under the influence of intoxicating liquor?

"A. Yes.

"Q. Was the defendant sober or intoxicated?

"A. Intoxicated.

"Q. Mr. Splett, you have seen intoxicated men, have you not?

"A. Yes.

"Q. And you have had occasion to observe them?

"A. Yes."

An objection to this testimony, on the ground that no foundation had been laid, was overruled.

Roland E. Lee, who was just behind Splett when the car door was opened, testified: "I detected the odor of alcohol.

"Q. Well, from what you saw in the car, and the expression on the defendant's face, from the odor of alcohol and the way he acted could you state whether or not he was drunk or sober?"

At this point the defendant's counsel, on permission of the court, asked the following questions:

"Q. You didn't have your head inside the car there, did you, you were about a foot and a half behind Splett?

"A. I was. . . .

"Q. You had alcohol in your radiator didn't you at the time?

"A. We did not.

"Q. You don't know whether or not there was alcohol in Mr. Michelski's radiator or not?

"A. I do not. . . . We didn't smell any alcohol until we opened the door, then we could smell alcohol. . . . If he (Michelski) was knocked out from the collision he couldn't lean back in his seat and say 'Hu-u-h!' . . .

"Q. The last question then, namely: 'Well, from what you saw in the car, and the expression on the defendant's face, from the odor of alcohol and the way he acted could you state whether or not the defendant was sober or drunk?'

"A. Yes."

In answer to the last question he stated that the defendant was drunk

and the objection to the testimony on the ground that no foundation had been laid was overruled and is assigned as error.

The witness Price testified: "I saw the defendant that day crossing from the northeast corner of the Northern Pacific railroad tracks going towards Pegg's Garage (Valley City). I was driving east and I honked my horn and he stopped while I passed the street.

"Q. And did you—from your observation of the defendant at that time could you tell, could you state, and from your past observations could you tell whether or not he was sober or under the influence of liquor?

"A. Well, I didn't hardly think he was sober. . . .

The Court: Answer the question yes or no. . . .

"A. Yes.

"Q. When you saw him at that time and place was he sober or under the influence of liquor? . . .

"A. Slightly under the influence of liquor."

The overruling of defendant's objection to this testimony, under objection, is assigned as error.

It is well settled that a nonexpert witness can testify to an opinion that a certain person was intoxicated at a certain time. "It has been repeatedly held that a nonexpert witness may testify to an opinion that a certain person was intoxicated. As the Alabama court remarks: 'A witness introduced by defendant testified that he saw plaintiff— shortly before the arrest complained of, as the context shows—and that he "saw he was drunk." This was excluded on plaintiff's objection. This was error. The indications of drunkenness are commonly known, and we think this statement of the witness was a permissible shorthand rendition of the facts, a statement of collective facts, which defendant was entitled to have submitted to the jury, subject to cross-examination.' " 3 Jones, Ev. page 2307, § 1253. Citing in support of the text Alabama, Arizona, Arkansas, California, Georgia, Illinois, Iowa, Maine, Maryland, Massachusetts, Michigan, New Jersey, New York, Pennsylvania, South Carolina, South Dakota, and Texas.

There was no error in admitting this evidence. It was admissible and its weight was for the jury.

The witness Lee testified, on cross examination:

"Q. . . . You have quite an interest in this lawsuit, haven't you?

"A. Not in this case.

"Q. Not at all? Haven't you brought an action against Michelski for damages pending in this court now?

"Mr. Sad: . . . The witness says he had no interest in this lawsuit. He didn't say any lawsuit.

"Mr. Paulson: Well, that is quite important to him to have a decision in this lawsuit. I think it shows interest. Let him answer.

"Mr. Sad: Objected to as incompetent, irrelevant, and immaterial.

"The Court: Sustained."

The sustaining of the objection to defendant's question is assigned as error.

The information sought to be elicited by appellant in the question "Haven't you brought an action against Michelski for damages pending in this court now?" was for the purpose of showing his interest in the prosecution of the criminal case. This is also shown in the colloquy between the State's attorney and the attorney for Defendant. The State's attorney interrupted the witness saying "The witness says he had no interest in this lawsuit. He didn't say any lawsuit." To which appellant's attorney answered, "Well, that is quite important to him to have a decision in this lawsuit. I think it shows interest. Let him answer." Answer what? The question "Haven't you brought an action against Michelski for damages pending in this court now?" That question is calling for evidence that was competent, relevant, and material, and an offer of proof was not necessary. The competency and relevancy of the question was apparent on its face and therefore an offer of proof was not necessary. Farmer v. Holmes, 7th paragraph of syllabus, 35 N. D. 344, 160 N. W. 143; Halley v. Folsom, 1 N. D. 325, 48 N. W. 219.

6 Jones on Evidence, 2d ed. p. 4998, § 2526, states the rule as follows: "When an objection to evidence is sustained and evidence is rejected, if prejudice to the party seeking to introduce the evidence is not self-apparent, in order to save the point on appeal it is necessary for such party to make his record by making an offer of proof of those matters of the proof of which he has been deprived by the ruling of the trial court."

A formal offer of proof is not necessary when an objection is sustained to a question calling for an answer which would obviously elicit material and relevant evidence. Linderoth v. Kieffer, 162 Minn. 440, 203 N. W. 415.

A witness may be cross examined to test his bias prejudice or interest in a case. State v. Malmberg, 14 N. D. 523, 105 N. W. 614. In 3 Wharton, Crim. Ev. 11th ed. p. 2229, the rule is stated as follows: "The accused may show the status of a civil action previously begun by the prosecuting witness against him, as a bearing upon the question whether the witness would profit by a conviction in the criminal case. Similarly, it may be shown that the prosecuting witness was the plaintiff in an action against the accused for damages arising out of the transaction for which he is being prosecuted, or that a witness for the state in a murder prosecution had brought suit against the accused for causing the death of the deceased." State v. Bosseau, 168 Wash. 669, 13 P. (2d) 53; Vyoral v. State, 88 Tex. Crim. Rep. 34, 224 S. W. 889; People v. Rongetti, 331 Ill. 581, 163 N. E. 373.

In Hoffman v. State, 85 Tex. Crim. Rep. 11, 209 S. W. 747, the prosecution arose out of a collision between an automobile and a buggy. There is a direct conflict between the prosecuting witness and the defendant, each claiming no negligence on his part and each claiming that the other was solely responsible for the collision, as in the instant case. The court said: "The prosecuting witness, Smith, having testified in behalf of the state to a state of facts showing negligence on the part of the appellant in causing the injury, was asked on cross-examination if it were not a fact that he had brought suit to recover damages resulting to him in the death of his wife from the injuries received in the collision, which suit was pending at the time of the trial of this action. His answer, which would have been an affirmative one, was excluded upon the objection of the state. His answer would have gone to show the jury his animus and interest in testifying to a state of facts showing culpability of the appellant in bringing about the collision; it was within a class of testimony which is always regarded as of value in enabling the jury to pass upon the credibility of the testimony given, and the weight which they will attach to it." In the second paragraph of the syllabus the court said: "In prosecution for homicide, based upon defendant's negligent operation of an

automobile resulting in collision with buggy in which deceased was riding, it was proper on cross-examination of deceased's husband, to elicit testimony showing that a suit brought by him for damages for his wife's death was pending."

In the case of Vyoral v. State, 88 Tex. Crim. Rep. 34, 224 S. W. 889, supra, the court, in the first paragraph of the syllabus, said: "In a prosecution for aggravated assault, court erred in refusing to permit accused to develop from prosecuting witness' cross-examination that she had sued him for damages on account of the incident, and that in the suit then pending she was seeking to recover a large sum of money, as tending to affect her credibility." This case was a prosecution arising out of a collision between an automobile and a horse and buggy.

People v. Rongetti, 331 Ill. 581, 163 N. E. 373, supra, in the ninth paragraph of the syllabus, the court states: "In trial for murder by abortion, it was competent for defendant to show that decedent's mother, who testified for the people, had brought suit against defendant for damages, to show her interest."

The case of State v. Bosseau, 168 Wash. 669, 13 P. (2d) 53, supra, the defendant was charged with the crime of driving a motor vehicle while under the influence of intoxicating liquor and on appeal the court said: "The appellant had a right to show the status of the civil action which had previously been begun by Radovich against him as bearing on the question whether Radovich would profit by a conviction in the criminal case."

The case of State v. Eaid, 55 Wash. 302, 104 P. 275, 33 L.R.A. (N.S.) 946, 19 Ann. Cas. 1234, was a prosecution for perjury. The appellant at the trial offered to prove the status of a civil action in which the false testimony is alleged to have been given but objection interposed by the state was sustained. The court said: "This ruling was erroneous and prejudicial. The defendants in the civil action were the principal witnesses against the appellant on the trial of the criminal prosecution. If the judgment appealed from is affirmed, the appellant is rendered incompetent to testify in the civil action or any other case, unless he shall receive a pardon. . . . The defendants in the civil action would profit by the conviction of the appellant to

that extent, and it was clearly competent to show that fact, and to have the jury properly instructed as to the effect of the conviction."

In the instant case the defendant is not prosecuted for perjury but he is prosecuted for a felony, and if convicted he would not be deprived of his right to testify as a witness; but it might be shown at the trial of the actions for damages that he had been convicted of a felony, for the purpose of affecting his credibility as a witness in such actions. Clearly the evidence was admissible to show the interest of the witness in testifying to a state of facts showing culpability of the defendant in causing the collision.

In the instant case a conviction depended upon the testimony of Roland E. Lee and Emil Splett. Those two witnesses and the defendant were the only eyewitnesses to the collision. According to the defendant's testimony he was driving on the right side of the road and that to avoid a collision he turned his car to the left. On the other hand, Lee and Splett claim that the defendant was coming on the wrong side of the road; that they could not get any farther to the right on account of the ditch, which was filled with water, and that they turned to the left to avoid a collision. The defendant should have been permitted to show that both Lee and Splett had at the time actions against him pending in the same court for damages which they claimed to have received in the collision.

It was error to exclude this line of testimony, for which there must be a new trial.

Appellant filed exceptions to the instructions given by the trial judge to the jury, which we have carefully examined and find no error therein. In view of a new trial we deem it proper to consider the seventh exception filed, namely: "The defendant excepts and objects generally to the instructions and the whole thereof on the ground that the Court failed to instruct and charge the jury to determine the degree of manslaughter, if any, of which defendant was guilty, and failed to instruct the jury as to manslaughter in the second degree as an included lesser offense, and failed to submit to the jury a verdict finding the defendant guilty of manslaughter in the second degree."

It is the contention of appellant that the trial judge should have defined, and submitted to the jury, manslaughter in the second degree

as well as manslaughter in the first degree; that he should have required the jurors to find the degree of manslaughter; and that he should have submitted to them a form of verdict finding the defendant guilty of manslaughter in the second degree. Appellant, however, did not request any such instruction nor request a form of verdict on manslaughter in the second degree, and it seems to be well settled that while it is proper to give such an instruction, the failure of the court to charge on the right of the jury to convict of a lower grade or degree of the crime charged is not reversible error, where such instruction is not specially requested. State v. Murbach, 55 N. D. 846, 215 N. W. 552; State v. Martin, 54 N. D. 840, 211 N. W. 585; State v. Horn, 21 S. D. 237, 111 N. W. 552; State v. Sutterfield, 22 S. D. 584, 119 N. W. 548; State v. Vierck, 23 S. D. 166, 120 N. W. 1098, 139 Am. St. Rep. 1040; 16 C. J. pp. 1023 and 1024, § 2451 and the voluminous notes supporting the text.

In State v. Hubbard, 20 S. D. 148, 104 N. W. 1120 the court instructed the jury in respect to the law of murder and of manslaughter in the first degree but refused to define manslaughter in the second degree or give an instruction that was thereon requested. Held prejudicial error.

In the case of State v. Denevan, 49 S. D. 192, 206 N. W. 927, the information charged that Ed Denevan on the 11th day of August, 1923, in Kingsbury County, while in an intoxicated condition, did then and there negligently, carelessly, recklessly, and feloniously drive a Buick automobile at an unlawful and excessive rate of speed upon the public highway of said county in such a manner as to wreck and overturn said automobile, etc. It was the contention of appellant in that case that the information charged only the crime of manslaughter in the first degree; that if the accused while engaged in the commission of a misdemeanor, or two misdemeanors, caused the death of Austin Denevan without the design to effect death, he was guilty of manslaughter in the first degree, and could not be convicted of manslaughter in the second degree. The court submitted these issues to the jury, and it is contended that the jury, having found the defendant guilty of manslaughter in the second degree, necessarily acquitted the defendant of manslaughter in the first degree. The information does not designate the crime as either degree of manslaughter, and it may be noted that

the information states that the death was caused by the gross and culpable negligence of the defendant, which is an act constituting manslaughter in the second degree, as above defined. The court submitted to the jury the question of the guilt of the defendant upon the higher charge, but also submitted the lower charge. If the defendant was guilty of manslaughter in the first degree because engaged in the commission of a misdemeanor, the misdemeanor was founded on negligence.

The information in the instant case, like the indictment in the South Dakota case, charges negligence. It alleges that the defendant ". . . while operating and driving a certain automobile . . . in a grossly negligent and careless manner with reckless disregard for the safety of others on said highway, in an unlawful manner, at a high rate of speed, while being on the wrong side of said highway contrary to the law of the road, without using the brakes on said automobile, strike one Clay Kuntz with said automobile operated by the said Joe Michelski causing the death and so killing the said Clay Kuntz, there caused by the felonious, unlawful, grossly negligent and careless operation of said automobile in the hands of the said Joe Michelski, without excuse or justification."

The information charges manslaughter in the first degree. but it includes the offense of second degree manslaughter, the evidence is such that the defendant might have been found guilty of manslaughter in the first degree or manslaughter in the second degree and upon request the court should define manslaughter in the second degree and submit that question to the jury also.

For the error heretofore mentioned the judgment is reversed and a new trial ordered.

CHRISTIANSON, MORRIS, NUESSLE and BURR, JJ., concur.