[No. 8429–1–I.   Division One.   August 17, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. MONT LEWIS WHYDE, *Appellant.*

*Peter Offenbecher* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lee D. Yates, Deputy,* for respondent.

RINGOLD, J.—The defendant Mont Lewis Whyde appeals from a judgment and sentence imposed after a jury found him guilty of second degree rape. The assignments of error are directed to the trial court's rulings concerning the admissibility of evidence. We hold the trial court erred as hereinafter discussed and therefore reverse and remand for new trial.

Mont Whyde and his wife were the managers of the apartment building where Ms. S lived. Whyde had visited S's apartment a number of times to attend to his duties as manager, and S had visited Whyde and his wife on occasion. The Whydes testified, but S denied, that S had invited Mr. Whyde to her apartment for a visit. On the basis of S's demeanor during her visits to his apartment, as well as her invitations, Whyde felt that she had a sexual interest in him. He has the same perception regarding another female tenant of the building, and testified that each of these women was trying to break up his marriage.

During the evening of August 1, 1980, Whyde consumed 8 to 10 whiskey and Coke drinks, and at 3:30 a.m., on August 2, telephoned S. He told her, untruthfully, that he

was locked out of his apartment and asked if he could wait in her apartment for the return of his wife, who had the keys. S consented and he went, taking along with him some alcoholic beverages.

S testified that in the course of his visit, Whyde forced her to perform various sexual acts. Whyde testified that he passed out with his arm around S but used no force and committed no sexual act.

After the incident Whyde accompanied S as she took her child to day care, and then as she caught her bus to work. Upon her arrival at work S went into the office of her supervisor, Ms. U, and tearfully related the events that had transpired earlier in the morning. Ms. U's testimony was essentially corroborative of S's version of the events.

Another tenant of the apartment, Ms. H, was permitted over objection to testify that on the morning of August 2, about 10 a.m., Whyde asked if he could kiss her.

Defense counsel offered to prove that after moving from the building S threatened to sue the owner, Byce, as a result of the rape, when he declined to refund her security deposit. The trial court did not allow into evidence the testimony of Byce regarding her threat to sue him and did not permit cross–examination of S regarding her intentions to sue Byce.

## THREAT TO SUE TO SHOW BIAS
### OR INTEREST

After a jury had been empaneled, the deputy prosecuting attorney made a motion in limine to exclude testimony and cross–examination regarding S's threat to sue Byce. S talked to Byce when she wanted to get her rent deposit back from him. Byce became quite irate and there was some discussion about whether she would sue over the incident.

Defense counsel argued that:

The motive that we were planning on bringing out, by not only cross examining the alleged victim as to this alleged offense, but also by direct examination of Mr.

Lloyd Byce, is that she intended, if Mr. Whyde was convicted to sue him for the damages and what not that she suffered not just over the security deposit but because of the alleged incident. So it's very relevant.

The trial court granted the State's motion in limine to preclude Byce's testimony and foreclosed this line of inquiry in cross–examination of S. Whyde contends that the ruling of the trial court was erroneous and that the ruling denied his constitutional right to confront the witness against him.

It is not necessary for us to determine whether constitutional rights are implicated here, though a much cited authority on Washington State evidence points out:

[T]he Sixth Amendment right of confrontation and the Fourteenth Amendment guarantee a right of cross–examination of a state's witness, whose testimony is a key element, as to matters showing his bias or prejudice, at least when such matters are particularly pertinent to his testimony under the circumstances of the case.

5 R. Meisenholder, Wash. Prac. § 299, at 107 (Supp. 1979).

The entire prosecution depended upon the credibility of the complaining witness. There was a total absence of any testimony that did not depend on S's credibility, nor was there any physical evidence to support the prosecution. The importance of the victim's credibility is reflected by the deputy prosecutor's statement in closing argument to the jury:

You recall what she did after the rape? And this is important, I think, when you evaluate the credibility of the witnesses, the reasonableness of the testimony in light of all of the evidence as the Court instructs you. Invariably it comes down to the two parties involved.

In the course of the same argument, the deputy prosecuting attorney challenged the defense:

I think you have a right to ask yourself what reasonable motive would there be on her part to fabricate an incident of that nature? I think you have a right to expect that from defense counsel when he tells you to believe Mr. Whyde to find that she is making it all up. What reason is there? Is it at all reasonable? One good reason. Even a bad reason I would like to hear, even a bad rea-

son, as to why she would do it under those circumstances. In defense counsel's closing argument he responded "When you come right down to it, you've got to decide whose [who is] telling the truth. And when you do that it's difficult." Defense counsel's response, though dealing with the possibility of suing the building owner, was without any evidentiary foundation. The deputy prosecuting attorney in concluding argument was able to argue:

The defendant would have you believe she was just throwing herself at him, or else the money, sue the landlord, the owner of the building. Is there any evidence of a lawsuit being filed? I didn't expect to hear a good reason, and I guess I did hear a bad one.

■ Bias and interest are relevant to the credibility of a witness. This is of special significance here because the entire State's case depends on the credibility of one witness. *State v. Tate,* 2 Wn. App. 241, 469 P.2d 999 (1970); *State v. Wills,* 3 Wn. App. 643, 476 P.2d 711 (1970).

■ Whether the victim intends to commence a civil action for money damages is a proper subject for impeachment. *Villaroman v. United States,* 184 F.2d 261 (D.C. Cir. 1950); *State v. Michelski,* 66 N.D. 760, 268 N.W. 713 (1936). Washington law is generally in accord. *State v. Constantine,* 48 Wash. 218, 93 P.2d 317 (1908); *State v. Eaid,* 55 Wash. 302, 104 P. 275 (1909); *State v. Boesseau,* 168 Wash. 669, 13 P.2d 53 (1932); *State v. Beaton,* 106 Wash. 423, 180 P. 146 (1919). Courts in several jurisdictions have extended the rationale to admit evidence of contemplated, as well as pending, civil actions. *Sullivan v. United States,* 404 A.2d 153 (D.C. 1979); *People v. Richmond,* 35 Mich. App. 115, 192 N.W.2d 372 (1971); *State v. Underwood,* 281 N.W.2d 337 (Minn. 1979); *State v. Decker,* 161 Mo. App. 396, 143 S.W. 544 (1912).

While trial courts have discretion in limiting the scope of cross–examination, Meisenholder states the rule to be:

Cross–examination of a witness for the purpose of showing bias, prejudice or interest is a matter of right, but the scope or extent of such cross–examination is a

matter in the sound discretion of the court. 5 R. Meisenholder, Wash. Prac. § 299, at 264 (1965).

■ The question of a possible lawsuit related directly to the bias, prejudice and interest of S; the trial court's ruling prevented the defense from making a factual record on which to base its contention that S fabricated the rape story for her own financial benefit, and was erroneous. It was also error to exclude this issue from S's cross–examination. To call these errors harmless would inevitably presume the truth of S's testimony and thereby beg the question. The court in *Davis v. Alaska,* 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974), observed that an appellate court cannot speculate whether the jury would have weighed the witness' testimony differently had proper cross–examination as well as extrinsic impeaching evidence been allowed.

### Excited Utterance

Whyde contends that the testimony of Ms. U, S's employer, was hearsay and not within the "excited utterance" exception to the hearsay rule. He argues that too much time had elapsed between the incident and S's report to her supervisor for S still to be under the influence of the event.

■ Whether an out of court statement is sufficiently trustworthy is a matter upon which the trial court should exercise its discretion. *Brewer v. Copeland,* 86 Wn.2d 58, 542 P.2d 445 (1975). The essential requirements for the admissibility of the statement under the exception permit the introduction of statements uttered under stress or excitement produced by the transaction forming the subject matter of the suit. 5 R. Meisenholder, Wash. Prac. § 491, at 471 (1965). ER 803(a)(2). *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113 (1939).

The record indicates that only a half hour had elapsed between the time that S left the company of Whyde to take her bus to work and her report to her employer, Ms. U. She was fearful and agitated when she told Ms. U what had

happened. S was under stress or excitement and Ms. U's report of S's statements was properly admitted into evidence. *See State v. Bloomstrom,* 12 Wn. App. 416, 529 P.2d 1124 (1974). The trial court did not abuse its discretion in allowing Ms. U's testimony.

## THE ATTEMPTED KISS

Lastly, Whyde argues that the trial court erred in allowing Ms. H to testify that on the morning following the incident, Whyde attempted to kiss her. The State responds that her testimony was highly probative of the defendant's motives and intent towards the female tenants of the apartment complex.

■ *State v. Golladay,* 78 Wn.2d 121, 142, 470 P.2d 191 (1970), states the appropriate rule:

> Aside from a consideration of whether the evidence tended to show a crime or sexual misconduct, it cannot be admitted under the lustful disposition exception, because it was in no way connected with, or directed toward, the victim.

Evidence of specific instances of a person's conduct is generally not admissible to prove the character of a person in order to show that he acted in conformity with that character trait on a particular occasion. ER 404(b). There is no connection between Whyde's attempt to kiss Ms. H after the incident with S, and whether he raped S. The trial court erred in admitting this evidence.

We reverse and remand for a new trial.

JAMES, C.J., and CALLOW, J., concur.