[No. 32268-1-I.    Division One.    February 6, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICIA BUSS, *Appellant*.

*Andrew S. Dimmock* and *Anne D. Thoeny* of *Associated Counsel for the Accused*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Carol Jean Murray, Deputy*, for respondent.

BAKER, A.C.J. — Patricia Buss appeals her conviction on one count of rape of a child in the first degree, RCW 9A.44.073. She contends the trial court erred in (1) admitting privileged statements she made to a "family minister" in violation of RCW 5.60.060(3), (2) refusing to allow her to cross-examine the victim's mother concerning possible bias, and (3) denying her motion for a mistrial after a witness violated a court order to not make any reference to the victim's sister. We hold that Buss' statements were not privileged, that the denial of cross examination was harmless error, that a mistrial was not required, and therefore affirm.

Buss was a babysitter for the victim, 3-year-old K. When K.'s mother, McWhirt, picked K. up one afternoon, K. told her that Buss had "made me put my hand in her butt". When McWhirt confronted Buss, Buss said, "I didn't hurt [K.]". When McWhirt asked Buss how long she had been doing this to K., Buss said "only a couple a times".

A doctor who examined K. that evening testified that K. had a normal examination but that this result was consistent with a history of digital penetration. A therapist testified that K. told her "[Buss] put her finger in my bottom". K. testified at trial that Buss had put her finger inside her. Buss' friend, Hansen, testified that Buss called her the day after the confrontation with McWhirt. Buss told Hansen that McWhirt had accused her of doing something improper to one of McWhirt's children. Hansen testified, "[Buss] said McWhirt told her, how could you do this, I trusted you. And I said, Patty, did you do it, and she said, yes. And she never told me what she did[.]"

## BUSS' STATEMENTS TO THE "FAMILY MINISTER"

Buss moved pretrial to exclude inculpatory statements she made to Robin LaMoria, a nonordained "family minister" at her Catholic church. LaMoria is an assistant to a priest and, due to a priest shortage, helps carry out the work of the church. She provides a young adult ministry, a formerly married persons ministry, and other services.

The trial court found that Buss' statements to LaMoria were outside the priest-penitent privilege because (1) the statements were not made in the course of the sacrament of confession but rather during a referral for counseling, and (2) LaMoria was not an ordained member of the clergy. La-Moria testified that Buss told her she had been sexually involved with K. and that "they were touching each other and she pointed down to her genital area".

## EXCLUDED CROSS EXAMINATION

Buss sought to cross-examine McWhirt about the possibility of a future civil suit against Buss. Buss produced a letter sent to her and her parents from an attorney. The letter indicated the attorney represented the McWhirts and intended to file a lawsuit. McWhirt admitted she had received a copy of the letter and had not informed either the attorney or Buss that the letter was incorrect or that the McWhirts would not be filing a lawsuit. When questioned by the court, Mr. McWhirt admitted discussing the matter with the attorney but denied asking the attorney to send the letter. When the court asked if the letter was authorized, Mr. Mc-Whirt was evasive. A civil action had not yet been filed but the McWhirts had not ruled it out.

The trial court noted, "what we're left with is the fact that the McWhirts have not ruled out the possibilities of a civil suit, and I just don't know how much relevance that has." The court excluded the letter and any mention of a lawsuit from the trial.

## BUSS' MOTION FOR A MISTRIAL

K.'s sister A. was with K. on the day of the alleged abuse and was present when K. disclosed the abuse to her mother. The court granted Buss' motion to exclude any reference to A., her medical examination, or her being a witness to any relevant events.[1] A prosecuting attorney who interviewed

---

[1]A. was not competent to testify and her statements did not fall within the child sexual abuse hearsay statute.

both girls testified at trial that K. did not disclose abuse to her. When the trial prosecutor asked if K.'s mother was present, she responded:

> No. We don't have — generally or usually, don't have family members present at the interviews or anyone else. It's usually just the person who's being interviewed and the detective, and I — I mean, I know here that there were two little girls and there were separate interviews.

Buss' objection was sustained.

The court denied Buss' motion for a mistrial but opted to give a curative instruction.

> You'll recall that when [the testifying prosecuting attorney] testified, she said words to the effect, there were two little girls and there were separate interviews. I'm instructing you that that testimony has no relevance to this case. I am striking that testimony, and I am instructing you to disregard it for all purposes. Okay?

The jury found Buss guilty. This appeal followed.

# I

Buss contends her incriminating statements to LaMoria were privileged.

> A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any confession made to him or her in his or her professional character, in the course of discipline enjoined by the church to which he or she belongs.

RCW 5.60.060(3). The dispositive issue is whether LaMoria is a member of the clergy for purposes of RCW 5.60.060(3). That LaMoria provided worthwhile personal guidance to members of the church is not questioned. However, we are not persuaded that the privilege created by RCW 5.60.060(3) extends to nonordained church counselors or to these kinds of counseling activities.

■ There is no common law priest-penitent privilege. 5A Karl B. Tegland, Wash. Prac., *Evidence* § 184, at 78 n.1 (3d ed. 1989). Statutory privileges are strictly construed. *State v. Sanders*, 66 Wn. App. 878, 883, 833 P.2d 452 (1992), *review denied*, 120 Wn.2d 1027 (1993). It is undisputed that La-Moria is not an ordained member of the Catholic clergy

and that Buss' statements to her were not made during confession. A strict reading of the statute indicates that Buss' statements were not privileged.

██ No Washington cases have interpreted RCW 5.60.060(3).[2] However, the suggestion that nonordained church counselors are considered clergy was rejected in *State v. Motherwell*, 114 Wn.2d 353, 788 P.2d 1066 (1990). In *Motherwell* three religious counselors appealed their convictions for violating RCW 26.44.030, which requires social workers (and others) to report child abuse within 48 hours. The appellants provided the church membership with counseling on marriage, family and financial problems. Each counselor had been informed of child abuse during counseling. *Motherwell*, 114 Wn.2d at 356. Only one of the counselors, Hartley, was an ordained minister. *Motherwell*, 114 Wn.2d at 358. The Supreme Court accepted Hartley's contention that the Legislature intended to exempt clergy from the reporting requirement. The other two counselors were not exempt because they were not ordained ministers. *Motherwell*, 114 Wn.2d at 359-60.

The determination in *Motherwell* that nonordained counselors are not "clergy" cannot be factually distinguished from the present case. Both LaMoria and the appellants in *Motherwell* provided religious counseling services to the church membership. While *Motherwell* determines who is considered "clergy" for purposes of a different statutory scheme than is at issue here, the clergy exemption from the reporting statute announced in *Motherwell* should be coextensive with the privilege under RCW 5.60.060(3). Both schemes regulate the clergy's rights and obligations to maintain the confidences of their penitents' confessions. We see no reason to adopt inconsistent definitions of "clergy" for such similar purposes.

██ Further, Washington's statutory privilege applies only if Buss' statements were a "confession . . . in the course of

---

[2]In *Rhinehart v. Seattle Times Co.*, 51 Wn. App. 561, 572-73, 754 P.2d 1243, *review denied*, 111 Wn.2d 1025 (1988), this court rejected the argument that RCW 5.60.060(3) precluded discovery of the names and addresses of members of a religious organization.

discipline enjoined by the church". RCW 5.60.060(3). La-Moria did not administer the Catholic sacrament of confession in the narrow, ecclesiastical sense. A narrow reading of "confession" or "course of discipline" includes only the sacrament of confession, which did not occur.

> By its terms, the statute is very narrow. Its language indicates that confessions must be in accordance with church discipline concerning confessions. Only confessions specifically authorized by particular churches seem to be included. Such confessions are authorized in relatively few religious denominations. *The apparent purpose of the statute is to protect formal church doctrines and procedures by protecting confessors who are constrained by such doctrines to follow confession procedures.*

(Italics ours.) 5A Tegland § 184, at 78. Nothing in the record suggests that Buss was constrained by her religious doctrines to disclose her criminal actions to LaMoria. Extension of the privilege to LaMoria's counseling is not consistent with either the wording or the purpose of RCW 5.60.060(3).

In response, Buss contends a limitation of the privilege to those situations where the penitent has an obligation to confess or the clergy has a duty to maintain confessions in confidence is unworkable for some faiths. Buss further suggests that a statute which protects only those denominations with formal confession requirements may give rise to constitutional problems. *See In re Swenson*, 183 Minn. 602, 603-05, 237 N.W. 589 (1931) (noting that the Minnesota Legislature could not have intended the privilege to apply only to the Catholic church). Whether RCW 5.60.060(3) would protect the adherents of faiths which lack ordained clergy or a definitive confessional procedure is academic in this case. Buss belongs to a church with a distinct priesthood and a clearly defined sacrament of confession. *See In re Murtha*, 115 N.J. Super. 380, 279 A.2d 889, 893, 49 A.L.R.3d 1196, *cert. denied*, 59 N.J. 239 (1971) (Catholic nun could not claim priest-penitent privilege). Because it is undisputed that Buss' statements were not within that defined procedure, the "discipline enjoined by the church" requirement is not satisfied in this case, whether or not LaMoria should be considered a member of the clergy.

■ Finally, Buss argues for a broader interpretation of "course of discipline" which includes counseling or family ministry. Buss relies on Tegland's suggestion that the privilege should be more broadly interpreted. Tegland notes that in recent years "statutes like Washington's statute have been characterized as 'early,' 'unduly restrictive,' and perhaps unconstitutionally preferential to certain religions." 5A Tegland § 184 (1994 Supp.). Such criticism, however well taken, does not answer the question of whether the Legislature or the courts should remedy the situation. To the extent there is a public policy basis for protecting a broader variety of ministry-related confidential relationships, it is offset by an equally weighty policy of allowing (or in some cases requiring) disclosure of known child abuse. *See* RCW 26.44. The Legislature is the source of statutory privileges and we leave to that body the responsibility of determining whether church-related counseling activities should be privileged. The trial court's determination that Buss' statements were not privileged was not error.

## II

■ Buss contends the trial court erred in refusing to allow cross examination of McWhirt about a possible civil action. Cross examination to show bias, prejudice or interest is a matter of right. Evidence that an alleged victim intends to pursue an action for damages is a proper subject of impeachment. *State v. Whyde*, 30 Wn. App. 162, 166, 632 P.2d 913 (1981); *State v. Smits*, 58 Wn. App. 333, 339, 792 P.2d 565 (1990). In *Whyde* the defendant was accused of raping another tenant in his apartment building. The trial court excluded evidence that the victim had threatened to sue the landlord if the defendant was found guilty. *Whyde*, 30 Wn. App. at 164-65. The reviewing court reversed, noting that the evidence was especially important to the defense case because the entire State's case depended on the credibility of the victim. *Whyde*, 30 Wn. App. at 166-67. In *Smits* we held that the trial court's refusal to allow inquiry into a possible civil action which had not yet been filed was reversible error. *Smits*, 58 Wn. App. at 338-39. Evidence that McWhirt was

contemplating a lawsuit against Buss was clearly relevant, under *Whyde* and *Smits*, to show McWhirt's bias or interest.

The State contends the evidence was too speculative. We disagree. A trial court may refuse cross examination where the evidence only remotely shows bias or is merely argumentative or speculative. *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980). Buss produced undisputed evidence that a lawsuit had been contemplated and an attorney consulted. The McWhirts' testimony which downplayed the significance of the attorney's letter was at best evasive and self-serving. The evidence was only speculative if all issues of credibility and weight were resolved in the State's favor. The trial court should not have accepted the Mcwhirts' statements at face value in determining the *admissibility* of Buss' evidence.[3]

█ The State argues that the trial court was in a position to weigh the McWhirts' credibility and found that they did not know a letter had been sent. This argument erroneously assumes the trial court had a duty to weigh the evidence beyond determining its admissibility. The question of whether the evidence was too speculative to be admissible as evidence of bias should have been decided by resolving issues of credibility in Buss' favor. The issues of credibility and the weight to be given to evidence of McWhirt's bias was for the jury to decide, not the court. Exclusion of the evidence was an abuse of the trial court's discretion.

█ █ We next consider whether this error requires reversal. We note that such an error may be of constitutional magnitude.

The denial of a criminal defendant's right to *adequately* cross-examine an essential State witness as to *relevant* matters tend-

---

[3]The State emphasizes the fact that a lawsuit had not been filed at the time of trial. This factor should be given very little weight. It is the fact that a victim *intends* to file a lawsuit which is relevant. *Whyde*, 30 Wn. App. at 166. Victims who intend to bring a parallel civil action have an interest in first establishing fault in the criminal proceeding. Given the relative length of the civil limitations periods compared to the speed with which criminal matters are brought to trial, victims would not be in any particular hurry to file a civil action which would make them appear biased when testifying in the criminal proceeding.

ing to establish bias or motive will violate the Sixth Amendment's right of confrontation, made applicable to the states by the Fourteenth Amendment.

*Roberts*, 25 Wn. App. at 834 (citing *Davis v. Alaska*, 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105 (1974)). Where the right to confront witnesses is violated, reversal is required unless the error was harmless beyond a reasonable doubt. *State v. Portnoy*, 43 Wn. App. 455, 462, 718 P.2d 805, *review denied*, 106 Wn.2d 1013 (1986) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 89 L. Ed. 2d 674, 106 S. Ct. 1431 (1986)); *Roberts*, 25 Wn. App. at 836.

■ Whether Ms. McWhirt was an essential witness in this trial is debatable. Everything she testified to was corroborated by other evidence. However, it is not necessary to determine whether the denial of cross examination into her possible bias violated Buss' right of confrontation. Rather, we find that the error was harmless, even under the stricter standard for constitutional error. We must consider the importance of the witness' testimony, whether the evidence was cumulative, the extent of corroborating and contradicting testimony, the extent of cross examination otherwise permitted and the strength of the State's case. *Portnoy*, 43 Wn. App. at 462 (citing *Van Arsdall*, 106 S. Ct. at 1438). McWhirt's testimony was cumulative and corroborated in all its essential points by untainted evidence. K.'s disclosures to McWhirt were repeated to the therapist and on the witness stand. Buss' incriminating remarks to McWhirt were also made to Hansen and LaMoria. The suggestion that McWhirt had a financial interest in the case did not impugn the credibility of 3-year-old K., Hansen, the therapist or LaMoria. Because the excluded evidence did not affect the weight of essential testimony and because overwhelming untainted evidence supports the verdict, the error was harmless beyond a reasonable doubt.

## III

■ ■ Buss contends the trial court abused its discretion in refusing a mistrial after the prosecuting attorney referred to K.'s sister, in violation of the pretrial order.

"The trial court should grant a mistrial only when the defendant has been so prejudiced that nothing short of a new trial can insure that the defendant will be tried fairly. Only errors affecting the outcome of the trial will be deemed prejudicial." In determining the effect of an irregular occurrence during trial, we examine "(1) its seriousness; (2) whether it involved cumulative evidence; and (3) whether the trial court properly instructed the jury to disregard it."

(Footnote omitted.) *State v. Johnson*, 124 Wn.2d 57, 76, 873 P.2d 514 (1994) (quoting *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)). Only the first factor is at issue here.[4]

Buss relies on *State v. Escalona*, 49 Wn. App. 251, 742 P.2d 190 (1987) and *State v. Miles*, 73 Wn.2d 67, 436 P.2d 198 (1968). In *Escalona* the defendant was charged with second degree assault. A State witness remarked, in violation of a pretrial order, that the defendant " 'already has a record and had stabbed someone' ". *Escalona*, 49 Wn. App. at 253. This court reversed, ruling that the erroneous admission of evidence of a prior crime was very serious and not cumulative. *Escalona*, 49 Wn. App. at 255-56. In *Miles* the defendants were charged with the armed robbery of a liquor store in Grandview. An officer who arrested the defendants testified that he was informed by Teletype that the suspects were headed for Spokane to duplicate the Grandview robbery. *Miles*, 73 Wn.2d at 68. The Supreme Court reversed, finding

[t]his testimony was calculated to and undoubtedly did implant in the minds of the jury the idea that the defendants had committed other robberies of this type and were therefore most likely to have committed the one charged.

*Miles*, 73 Wn.2d at 70.

Buss contends the most logical inference which the jury could draw was that there was another victim in this case. We disagree. While the prosecuting attorney's remark was a serious violation of the court's order, it was not as serious as

[4]Buss does not object to the court's curative instruction. The suggestion that K.'s sister or any other child besides K. was involved was not cumulative and the State does not argue otherwise.

the remarks in *Escalona* and *Miles*. Neutral inferences can be drawn from the remark. The other girl could have been a witness. Even if the jury inferred that there was another potential victim involved, the further inference that Buss did anything improper to a second child is not a strong one. It must be recalled that the prosecuting attorney testified that K. did not disclose any abuse during her interview.

The trial court was clearly concerned with the effect of the improper remarks and carefully considered whether a mistrial was required. The court concluded that a clear and specific curative instruction would suffice. In so ruling, the trial court did not abuse its discretion.

Affirmed.

GROSSE and AGID, JJ., concur.