[No. 67254-7. En Banc.]
Argued March 23, 1999.       Decided May 6, 1999.

THE STATE OF WASHINGTON, *Petitioner*, v. SCOTT A. MARTIN, *Defendant*, RICH HAMLIN, *Respondent*.

*John W. Ladenburg, Prosecuting Attorney,* and *Kathleen Proctor, Deputy,* for petitioner.

*Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, by *John R. Connelly, Jr.*, and *Gary E. Hood*; and *Ellis, Li & McKinstry, P.L.L.C.*, by *Steven T. O'Ban* and *Keith A. Kemper*, for respondent.

*Steven T. McFarland* on behalf of Christian Legal Society, amicus curiae.

SMITH, J. — Petitioner State of Washington seeks review of a decision of the Court of Appeals, Division Two, which reversed and remanded to the Pierce County Superior Court for further proceedings that court's decision interpreting the clergy-penitent privilege statute, RCW 5.60-.060(3), and reversing its order holding an ordained minister in contempt of court for refusing to testify in a deposition for the State of Washington in a case against a defendant charged with second-degree murder in the death of his three-month-old son. We granted review. We affirm.

## QUESTIONS PRESENTED

The questions presented in this case are: (1) whether the words "in the course of discipline enjoined by the church to which he or she belongs" in RCW 5.60.060(3), the clergy-penitent privilege statute, refer to the penitent or to the clergy member; (2) the meaning of the word "confession" as used in the statute; (3) whether the presence of a third party during a communication between a penitent and a clergy member vitiates the privilege; and (4)

whether the clergy-penitent privilege belongs to the penitent or to the clergy member.[1]

## STATEMENT OF FACTS

On July 6, 1997, Devyn Martin, three-month-old son of Defendant Scott A. Martin, was hospitalized at Madigan Army Medical Center at Fort Lewis, Washington.[2] Upon examination, the hospital staff discovered the infant had sustained retinal hemorrhages, subdural hematoma, bilateral intraventricular bleeding and bilateral upper humeral fractures.[3] From these injuries the staff concluded the child was "a victim of abuse and the injuries were consistent with the child having been violently shaken."[4]

On July 7, 1997, Respondent Rich Hamlin, an ordained minister and pastor of the Evangelical Reformed Church of Tacoma, while working at the offices of Youth for Christ of Tacoma, received a telephone call from Ms. Leona Harri asking him to meet with her son, Defendant Scott A. Martin.[5] Ms. Harri asked if the conversations between Respondent and her son would be confidential and Respondent assured her they would be.[6] At the time of the telephone call Respondent had met neither Ms. Harri nor her son.[7]

The Evangelical Reformed Church is a nonprofit religious organization in the state of Washington.[8] The church's doctrine "includes as an essential element of . . . worship service a confession followed by a time of silence intended to

---

[1]We adopt the ordinary dictionary meaning of "penitent" as one who repents of sin and asks for forgiveness.

[2]Clerk's Papers at 73.

[3]*Id.*

[4]*Id.*

[5]*Id.* at 12-13.

[6]*Id.* at 13.

[7]*State v. Martin*, 91 Wn. App. 621, 623, 959 P.2d 152 (1998).

[8]Clerk's Papers at 12.

remind the congregation of the need to repent of personal sin and receive the Lord's assurance of forgiveness."[9] Individuals and families are given an opportunity to meet privately with the pastor,[10] and all services and ministries of the church are available to members and nonmembers alike.[11] In addition to his pastorate, Respondent Hamlin works part-time as assistant director of Youth for Christ in Tacoma, a Christian organization dedicated primarily to serving children between the ages of 12 and 18 years.[12]

On July 7, 1997, Respondent went to Defendant Martin's apartment in Tacoma.[13] Upon his arrival, Ms. Harri introduced Respondent to her son as the "preacher."[14] At first Mr. Martin was withdrawn and apprehensive about speaking to Respondent, but with his mother's assistance he overcame his reluctance.[15] The two men then spoke for about an hour and a half during which time they prayed and Respondent provided spiritual counsel to Mr. Martin.[16] The record does not indicate when or how long Ms. Harri was present during this conversation between Respondent and her son.

On July 8, 1997, Respondent disclosed part of the conversation he had with Defendant the day before to two colleagues from Youth for Christ.[17] Respondent acknowledged he at no time received permission from Defendant Martin to discuss the substance of their July 7, 1997 conversation with anyone.[18]

---

[9]*Id.* at 13.

[10]*Id.*

[11]*Id.*

[12]*Id.*

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]*Id.*

[17]*State v. Martin*, 91 Wn. App. 621, 625, 959 P.2d 152 (1998).

[18]Clerk's Papers at 14.

On July 9, 1997, Detective Brent Bomkamp, Pierce County Sheriff's Department, spoke to Mr. Martin regarding the injuries sustained by his infant son, Devyn Martin.[19] The record indicates only that Mr. Martin requested an attorney.[20] On July 10, 1997, Detective Bomkamp spoke with Mr. Martin's wife, the mother of Devyn Martin.[21] She told Detective Bomkamp that after the detective left the day before, her husband admitted to her that he "did it."[22] She said he admitted shaking the child on July 5, 1997 because the child was fussing and he lost control.[23] Mr. Martin previously had told his wife the child fell off the couch on July 2, 1997.[24]

Petitioner State of Washington learned of Respondent Hamlin's involvement with Defendant Martin from a conversation Detective Bomkamp had with Respondent at Madigan Army Medical Center.[25] Respondent told Detective Bomkamp Mr. Martin had disclosed more information to him than Mr. Martin had disclosed to Child Protective Services (CPS) which was also investigating the injuries sustained by the infant Devyn Martin.[26] Petitioner State of Washington also learned of the conversation between Respondent and Mr. Martin through a CPS referral.[27]

The infant Devyn Martin died on July 10, 1997.[28] An autopsy by the Pierce County Medical Examiner's Office concluded he sustained internal injuries consistent with those discovered by the staff of Madigan Army Medical

---

[19]*Id.* at 73.

[20]*Id.*

[21]*Id.*

[22]*Id.* Admissibility of statements by Defendant Martin's wife is not an issue in this proceeding. *See* RCW 5.60.060(2).

[23]Clerk's Papers at 73-74.

[24]*Id.* at 73.

[25]*Martin*, 91 Wn. App. at 624-25.

[26]*Id.* at 625.

[27]*Id.*

[28]Clerk's Papers at 73.

Center.[29] The medical examiner classified the death as a homicide.[30]

Petitioner State of Washington on July 11, 1997 filed an Information in the Pierce County Superior Court charging Defendant Scott A. Martin with murder in the second degree, in violation of RCW 9A.32.050(1)(b), for causing the death of his infant son, Devyn Martin, on July 10, 1997.[31] After the charges were filed Mr. Martin turned himself in to the Pierce County Sheriff on July 12, 1997.[32] He is presently incarcerated at the Pierce County Correctional Facility awaiting trial which has been stayed pending the outcome of this proceeding.[33]

After their initial meeting on July 7, 1997, but prior to his surrendering to the Sheriff, Mr. Martin met two additional times with Respondent Rich Hamlin.[34] Their meetings took place at Madigan Army Medical Center and at the home of a friend of Mr. Martin in Federal Way, Washington.[35]

On September 25, 1997, Petitioner State of Washington filed a motion in the Pierce County Superior Court requesting that statements made by Defendant Martin to Respondent on July 7, 1997 not be considered privileged under RCW 5.60.060(3).[36] Judge Brian M. Tollefson, in granting that motion, concluded "there was no showing through testimony presented that defendant [Martin] felt he was constrained by any religious obligation to make the state-

---

[29]*Id.*

[30]*Id.* at 74.

[31]*Id.* at 71-72.

[32]*Id.* at 2.

[33]*Id.*

[34]*Martin*, 91 Wn. App. at 623.

[35]*Id.*

[36]Clerk's Papers at 18-21.

ment he made to [Respondent] Pastor Hamlin"[37] as required by *State v. Buss*.[38] The trial court then issued an order allowing the State to depose Respondent Hamlin in the normal course of its investigation.[39]

On October 24, 1997, Defendant Martin filed a notice for discretionary review in this court seeking to reverse the trial court's decision granting Petitioner State's motion.[40] The Supreme Court Commissioner denied that request on January 15, 1998.[41]

On November 24, 1997, Petitioner State of Washington filed a motion for an order to depose Respondent[42] which the trial court granted on December 4, 1997 in an order requiring Respondent to make himself available for deposition on December 16, 1997.[43] At the deposition, Respondent "answered questions concerning the circumstances of his conversations with [Defendant] Martin, but refused to answer questions regarding the content of those conversations based upon his religious free exercise rights"[44] under the First and Fourth Amendments of the United States Constitution.[45]

On January 8, 1998, the trial court held a hearing on the constitutional issues,[46] and ruled Respondent did not have "an independent constitutional right to withhold information from the State."[47] An order of contempt was then entered against Respondent requiring him to report on

---

[37]*Id.* at 24.

[38]76 Wn. App. 780, 786, 887 P.2d 920 (1995).

[39]Clerk's Papers at 24.

[40]*Id.* at 75.

[41]*Id.* at 76-81.

[42]*Id.* at 25-27.

[43]*Id.* at 36.

[44]*Martin*, 91 Wn. App. at 624.

[45]Clerk's Papers at 42-52, 56-61.

[46]*Id.* at 39.

[47]*Id.* at 66.

January 16, 1998 to be taken into custody unless the Court of Appeals or the Supreme Court stayed the order, or unless Respondent answered the questions he previously refused to answer.[48]

Respondent then petitioned for and was granted discretionary review by the Court of Appeals, Division Two.[49] The Court of Appeals also stayed the contempt order against him pending appeal, and granted Petitioner State's request for an emergency stay of Defendant Martin's criminal trial until Respondent Hamlin's appeal on the contempt charge could be decided.[50]

In reversing the trial court, the Court of Appeals, the Honorable Elaine Houghton writing, held "[Defendant] Martin's statements to [Respondent] Pastor Hamlin, to the extent they were confidential, are privileged under RCW 5.60.060(3)."[51] The case was remanded to the Pierce County Superior Court for further proceedings consistent with that ruling,[52] and Petitioner State's motion for reconsideration was denied. Petitioner then filed a petition for review with this court which was granted on January 6, 1999.

## DISCUSSION

■■■■■ The earlier Court of Appeals', Division One, case of *State v. Buss*[53] announced three requirements which must be satisfied before communications between a member of the clergy and a penitent can be considered privileged under RCW 5.60.060(3): (1) the clergy member must be ordained[54]; (2) the statements must be made as a "confession . . . in the course of discipline enjoined by the

---

[48]*Id.* at 63-64.

[49]*Martin*, 91 Wn. App. at 625.

[50]*Id.*

[51]*Id.* at 623.

[52]*Id.*

[53]76 Wn. App. 780, 887 P.2d 920 (1995).

[54]*Id.* at 784.

church"[55]; and (3) the penitent must be constrained by religious obligation to make the confession.[56] We agree with the first two requirements, but not with the third requirement which is based upon an interpretation of the phrase "in the course of discipline enjoined by the church to which he or she belongs" in RCW 5.60.060(3) as referring only to the penitent.[57]

In relying on *Buss*, the trial court in this case concluded Defendant Martin's statements to Respondent were not privileged because Mr. Martin did not feel "constrained by any religious obligation to make the statement he made to [Respondent] Pastor Hamlin."[58] In reversing the trial court in this case, the Court of Appeals "disagree[d] with the *Buss* court's interpretation of the clergy member privilege, and decline[d] to follow its reasoning."[59] It held "[Defendant] Martin's statements to [Respondent] Pastor Hamlin, to the extent they were confidential, are privileged under RCW 5.60.060(3)."[60] According to the Court of Appeals, it is the "clergy member receiving the confidential communication [who must] be enjoined by the practices or rules of the clergy member's religion to receive the confidential communication and to provide spiritual counsel" under RCW 5.60.060(3).[61] We are in agreement with the conclusion of the Court of Appeals in this case.

The clergy-penitent (priest-penitent) statute, RCW 5.60.060(3), states:

A member of the clergy or a priest shall not, without the consent of a person making the confession, be examined as to any confession made to him or her in his or her professional

---

[55]*Id.* at 785-86.

[56]*Id.* at 786.

[57]*Id.* at 785-86.

[58]Clerk's Papers at 24.

[59]*Martin*, 91 Wn. App. at 627.

[60]*Id.* at 623.

[61]*Id.* at 629.

character, in the course of discipline enjoined by the church to which he or she belongs.

Petitioner State of Washington assigns error to the Court of Appeals' interpretation of RCW 5.60.060(3), which it asserts violates the well-established legal principle that testimonial privileges, generally speaking, are strictly construed.[62] It asserts that the language "in the course of discipline enjoined by the church to which he or she belongs" refers to the penitent and not to the clergy member as the Court of Appeals concluded.[63] According to Petitioner, the Court of Appeals' construction of RCW 5.60.060(3) is unnecessary and redundant because the phrase "in his or her professional character" already requires the clergy member to act "pursuant to the rules and practices of his religion."[64]

Petitioner's interpretation of RCW 5.60.060(3) asserted in its brief is not correct. One element of the privilege requires the clergy member to act in a professional capacity,[65] and another element requires the church to which the clergy member belongs to recognize confession or spiritual counseling in the course of discipline enjoined by the church.[66] Other states, with similar or identical clergy-

---

[62]Pet. for Review at 10; *see Trammel v. United States*, 445 U.S. 40, 50, 100 S. Ct. 906, 912, 63 L. Ed. 2d 186 (1980).

[63]Pet. for Review at 12.

[64]*Id.* Petitioner, however, in oral argument before this court conceded that the questioned phrase in the statute refers to the clergy and not to the penitent.

[65]*Scott v. Hammock*, 870 P.2d 947, 955 (Utah 1994); *People v. McNeal*, 175 Ill. 2d 335, 677 N.E.2d 841, 222 Ill. Dec. 307 (1997) (Penitent's brother, a clergy member, was not acting in professional capacity at the time of communication); *Bonds v. State*, 310 Ark. 541, 837 S.W.2d 881 (1992) (statements to clergy member who was employer not privileged); *Magar v. State*, 308 Ark. 380, 826 S.W.2d 221 (1992) (statements were not made to clergy member in his professional capacity); *State v. Barber*, 317 N.C. 502, 346 S.E.2d 441 (1986) (friend was not clergy member at time of statements); *Masquat v. Maguire*, 638 P.2d 1105 (Okla. 1981) (statements to a nun in her capacity as a hospital administrator and not as a clergy member were not privileged).

[66]*Scott*, 870 P.2d at 955; *Bonham v. State*, 644 N.E.2d 1223, 1225 (Ind. 1994).

penitent (priest-penitent) statutes,[67] have interpreted their statutes as the Court of Appeals has interpreted RCW 5.60.060(3) in this case.[68]

The Utah Supreme Court interpreted language in the Utah statute, which has substantially the same words as "in the course of discipline enjoined by the church to which he or she belongs" in the Washington statute, as referring to the clergy member only. *Scott v. Hammock*.[69] The wording of the Utah statute, UTAH CODE ANN. § 78-24-8(3) (1953), however, is more precise than the wording of our statute. The Utah statute reads:

> A clergyman or priest cannot, without the consent of the person making the confession, be examined as to any confession made to him in his professional character in the course of discipline enjoined by the church to which he belongs.

If we construed RCW 5.60.060(3) as *Buss* and Petitioner suggest, the penitent would be required to establish that the penitent's religion requires the penitent to engage in confession before the privilege would apply. Under that reasoning the statute could also be construed as requiring the penitent to in fact be a member of the church of the clergy to whom the penitent confessed. The language of RCW 5.60.060(3) does not lend itself to such a construction.[70]

Petitioner State also assigns error to the Court of Appeals' concept of "confession."[71] In affirming the trial court, the Court of Appeals held that the religious entity, and not the courts, should "decide what types of communications

---

[67]*See* MONT. CODE ANN. § 26-1-804; UTAH CODE ANN. § 78-24-8(3); W. VA. CODE § 57-3-9(1).

[68]*See State v. MacKinnon*, 957 P.2d 23 (Mont 1998); *Scott*, 870 P.2d 947; *State v. Potter*, 197 W. Va. 734, 478 S.E.2d 742 (1996).

[69]870 P.2d 947, 950 (Utah 1994).

[70]*Erection Co. v. Department of Labor & Indus.*, 121 Wn.2d 513, 518, 852 P.2d 288 (1993) ("The court must give words in a statute their plain and ordinary meaning unless a contrary intent is evidenced in the statute.").

[71]Pet. for Review 11.

constitute confessions within the meaning of a particular religion."[72] Both the trial court and the Court of Appeals were correct. Determination of the definition of "confession" referred to in RCW 5.60.060(3) is to be made by the church of the clergy member.[73]

The Court of Appeals also addressed the questions whether the presence of a third party during the confession vitiates the privilege, and whether the clergy member divulging part of the confession to a third party without the penitent's consent waives the privilege. Confidentiality is a necessary factor in establishing a testimonial privilege.[74] The mere presence of third persons during a confidential communication in some instances may vitiate the privilege.[75] The privilege protects only successful confidences.[76] The privilege is not vitiated when the presence of the third person is necessary for the communication to occur,[77] or, as the Court of Appeals stated, when the third person is another member of the clergy.[78]

Respondent's divulging part of his July 7, 1997 conversation with Defendant Martin to his colleagues at Youth for Christ does not of itself constitute a waiver of the privilege.

---

[72]*Martin*, 91 Wn. App. at 628; *see also* Clerk's Papers at 23-24

[73]*Scott*, 870 P.2d at 951.

[74]*Dietz v. Doe*, 131 Wn.2d 835, 850, 935 P.2d 611 (1997) (attorney-client privilege); *Carson v. Fine*, 123 Wn.2d 206, 213, 867 P.2d 610 (1994) (physician-patient privilege); *State v. Barnhart*, 73 Wn.2d 936, 940, 442 P.2d 959 (1968) (spousal privilege).

[75]*See Dietz*, 131 Wn.2d at 850; *Barnhart*, 73 Wn.2d at 940; *Scott*, 870 P.2d at 955.

[76]*Barnhart*, 73 Wn.2d at 940; *State v. Thorne*, 43 Wn.2d 47, 56, 260 P.2d 331 (1953).

[77]*In re Grand Jury Investigations*, 918 F.2d 374, 384, 386 (3d Cir. 1990). The case involved application of the clergy-penitent privilege under Federal Rule of Evidence 501. Washington Rules of Evidence (ER), although substantially identical to the federal rules, does not state an equivalent rule, but reserves and cites applicable statutes on privilege, including the "clergyman or priest" privilege under RCW 5.60.060(3).

[78]*See Martin*, 91 Wn. App. at 634.

Defendant Martin did not consent to this disclosure.[79] The privilege belonged to him,[80] although the statute imposes responsibility for maintaining confidentiality upon the clergy. There was no waiver of confidentiality in this instance.

The petition for review, without fully elaborating, raises the constitutional question whether a member of the clergy has a right to refuse to testify under the First Amendment or the Fourth Amendment concerning nonconfidential communications with a penitent.[81] Respondent originally invoked his First Amendment and Fourth Amendment rights after he refused to answer questions concerning the content of his conversations with Defendant Martin.[82] In his brief he asserted it was not necessary for this court to address these issues because the Court of Appeals based its decision solely upon its interpretation of the statute.[83] Because of the decision we reach, we need not address the constitutional issues. "A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case."[84]

Issues of statutory construction are questions of law over which this court exercises de novo review.[85] In this case a reading of RCW 5.60.060(3) supports the construction articulated by the Court of Appeals. The phrase "in the course of discipline enjoined by the church to which he or she belongs" refers to the clergy member and not to the penitent as *Buss* and Petitioner suggest. The subject of the

---

[79]Clerk's Papers at 14.

[80]*Potter,* 197 W. Va. at 746; *Dietz,* 131 Wn.2d at 850 ("The attorney-client privilege can ordinarily be waived only by the client, to whom the privilege belongs."); *McUne v. Fuqua,* 42 Wn.2d 65, 74, 253 P.2d 632 (1953) ("The [physician-patient] privilege is for the benefit of the patient . . . .").

[81]Pet. for Review at 13-16.

[82]*Martin,* 91 Wn. App. at 624.

[83]Answer to Pet. for Review at 14-16.

[84]*State v. Hall,* 95 Wn.2d 536, 539, 627 P.2d 101 (1981).

[85]*Dioxin/Organochlorine Ctr. v. Pollution Control Hearings Bd.,* 131 Wn.2d 345, 352, 932 P.2d 158 (1997).

statute is the clergy member. All pronouns in the statute (him, her, he, she) refer back to the clergy member and not to the penitent. Utah's similar clergy-penitent statute has also been interpreted in this manner.[86]

Although testimonial privileges are usually strictly construed, the word "confession" in RCW 5.60.060(3) should not be. A broad interpretation of "confession" would "minimize the risk that [RCW 5.60.060(3)] might be discriminatorily applied because of differing judicial perceptions of a given church's practices or religious doctrine . . . ."[87] The Court of Appeals in this case properly defined "confession" as a confidential communication between a clergy member and a penitent and correctly held that only confidential communications are privileged, that the penitent is the holder of the privilege, and that only the penitent can waive the privilege.

We agree with the Court of Appeals that the language "in the course of discipline enjoined by the church to which he or she belongs" in RCW 5.60.060(3), the clergy-penitent privilege statute, requires that the "clergy member . . . be enjoined by the practices or rules of the clergy member's religion to receive the confidential communication and to provide spiritual counsel."[88] The privilege belongs to the penitent, but the obligation of confidentiality rests upon the clergy. It is not necessary for the penitent to be compelled by the penitent's religion to confess in order for the privilege to apply. The word "confession" as used in the statute is defined by the religion of the clergy member receiving the communication and not by the penitent. The privilege may be vitiated by the presence of a third person during communication between a penitent and a clergy member intended to be a confession unless the third person is necessary for the communication or the third person is another member of the clergy. Vitiation by presence of a

---

[86]Utah Code Ann. § 78-24-8(3) (1953); see Scott, 870 P.2d 947.

[87]See State v. MacKinnon, 957 P.2d 23, 28 (Mont..1998).

[88]Martin, 91 Wn. App. at 629.

third person is a matter of fact which must be determined in each case as the issue arises.

## SUMMARY AND CONCLUSIONS

On July 7, 1997, during a conversation between Respondent Rich Hamlin, an ordained minister of the Evangelical Reformed Church, and Defendant Scott A. Martin, Mr. Martin made what he believed to be confidential disclosures to the ordained minister relating to the substance of an anticipated criminal charge arising out of the death of his infant son. An Information was filed in the Pierce County Superior Court on July 11, 1997 charging Mr. Martin with second-degree murder.

Based upon Petitioner State of Washington's motion, Pierce County Superior Court Judge Brian M. Tollefson ruled there was no clergy-penitent privilege under RCW 5.60.060(3) for the July 7, 1997 communication between Respondent and Defendant Martin because it was not shown that Mr. Martin felt constrained by religious obligation to confess to Respondent Hamlin as required under the trial court's interpretation of *State v. Buss* and the clergy-penitent statute, RCW 5.60.060(3).

In reversing the trial court, the Court of Appeals disagreed with *Buss* and concluded it is the "clergy member receiving the confidential communication [who is] . . . enjoined by the practices or rules of the clergy member's religion to receive the confidential communication and to provide spiritual counsel."[89] The Court of Appeals also concluded the word "confession" in RCW 5.60.060(3) is defined by the religion of the clergy member. The court also concluded the presence of a third person during confidential communications between a clergy member, and a penitent may vitiate the clergy-penitent privilege unless the third person is a member of the clergy or the person's presence is necessary for the communication and the penitent is the holder of the privilege and is the only person

---

[89]*Martin*, 91 Wn. App. at 629.

who can waive it. *State v. Buss* is not authority in this case. Even if we agreed with that decision of the Court of Appeals, Division One, the case is distinguishable because it involved communications to a nonordained assistant to a priest and not communications to an ordained minister or priest.

We affirm the decision of the Court of Appeals, Division Two, which reversed and remanded the case to the Pierce County Superior Court for further proceedings and interpreted RCW 5.60.060(3), the clergy-penitent privilege, in this manner: (1) the phrase "in the course of discipline enjoined by the church to which he or she belongs" refers to the member of the clergy and not to the penitent; (2) "confession" is defined by the religion of the clergy; (3) confidential communications between the member of the clergy and the penitent are privileged and the presence of a third person may vitiate the privilege unless that person is another member of the clergy or the person's presence is necessary for the communication; and (4) the penitent is the holder of the privilege and the only person who can waive it.

Our decision in this case necessarily disposes of the order of contempt imposed upon Respondent Hamlin and requires its dismissal.

GUY, C.J., and DURHAM, JOHNSON, MADSEN, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., concur.